# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 11, 2001 Session

## LOUE G. MANNING v. K-TRANS MANAGEMENT, INC.

**Appeal from the Chancery Court for Knox County**
**No. 138864-2     Daryl R. Fansler, Chancellor**

### FILED OCTOBER 29, 2001

### No. E2000-02462-COA-R3-CV

---

Loue G. Manning appeals a summary judgment granted in favor of K-Trans Management, Inc., as to his suit seeking damages for violation of the Tennessee Human Rights Act and intentional infliction of emotional distress as a result of his termination by K-Trans. We find there is no material evidence to support his insistence that he was terminated because of his race and affirm the judgment below.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Jerrold L. Becker and Samuel W. Brown, Knoxville, Tennessee, for the Appellant, Loue G. Manning

John M. Lawhorn, Knoxville, Tennessee, for the Appellee, K-Trans Management, Inc.

## OPINION

This is a suit by Loue G. Manning, a black male, against his former employer, K-Trans Management, Inc. The complaint contains two counts. The first seeks damages for violation of the Tennessee Human Rights Act, codified in T.C.A. 42-21-101, et seq. The second seeks damages for intentional infliction of emotional distress. It appears that the claim as to the second count has been abandoned on appeal.

K-Trans filed a motion for summary judgment which was sustained by the Trial Court, resulting in this appeal, wherein Mr. Manning raises the following two issues:

A.	The Appellee Discriminated Against the Appellant by Disciplining the Appellant in a Far More Severe Fashion and Due to a Far Less Significant Transgression, than When it Disciplined a Comparable White Male Manager; and,

B.	The Appellee's Stated Rationale for Terminating the Appellant is Entirely Pretextural, as the Appellant Cannot Tenably Point to Any Company Policy Which the Appellant in Fact Violated.

The standard of review for summary judgment has recently addressed in the case of Staples v. CBL & Associates, 15 S.W.3d 83, 89 (Tenn. 2000), wherein our Supreme Court restated the rule enunciated in Byrd v. Hall, 847 S.W.2d 208 (Tenn. 1993), as follows

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

Applying the foregoing rule relative to our review of the evidence, we find the record discloses the following facts. Mr. Manning was employed by K-Trans for over 25 years. He began his employment as a bus driver and ultimately became one of five directors, immediately under the General Manager, Timothy A. Lett, a white male, and was serving in that capacity when he was terminated for an incident occurring on January 21, 1998.

On that day Mr. Manning, who was furnished an automobile by K-Trans while at work and also for his personal use, awoke feeling somewhat lightheaded, which he attributed in part to his hypertension, as well as nitroglycerin tablets which had been prescribed for him on the day in question, or the day before. During the morning hours he drank four 12-ounce cans of beer and about 3:00 p.m.–after a nap–drove a K-Trans automobile to a Kentucky Fried Chicken establishment. As he was backing out of his parking place to leave, another car directly behind him was also backing out, resulting in a collision of the rear of each vehicle. The damages were minor–only a scratch on the K-Trans vehicle and a damaged taillight on the other.

After the collision, Mr. Manning called K-Trans to report the accident and was transported to the K-Trans office by the driver of the other vehicle.

While at the K-Trans office he was instructed by fellow employees, Dennis Lowery, Director of Operations, and Gary A. Robinson, Director of Safety and Training–in accordance with company policy–to submit to a drug screening. He at first agreed to do so, but then changed his mind and requested that he be allowed to wait three hours to have the screening done, in accordance with what

he understood was permitted for a white male supervisor who was drinking while overseeing K-Trans operations in connection with a University of Tennessee football game.

After some discussion and a heated argument between Mr. Manning and Messrs. Lowery and Robinson, Mr. Manning, in the company of a third employee, James E. Jackson, was taken to his home. He apparently stayed there until Mr. Jackson had completed other business and returned to pick Mr. Manning up to take him to a testing laboratory where he underwent a drug test at 7:30 p.m. This test proved negative.

Thereafter, after an interview with Mr. Lett, Mr. Manning was terminated according to the termination notice for "driving a company vehicle after consuming alcohol and refusal to take a post-accident breath test following an accident."

As pertinent to the disposition of this case, the Employee Handbook contained the following work rule:

> It is not possible to list all the forms of behavior that are considered unacceptable in the workplace. The following are examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment:
>
> . . . .
>
> -Working under the influence of alcohol or illegal drugs
> -Possession, distribution, sale, transfer, or use of alcohol or illegal drugs in the workplace, while on duty, or while operating KAT[1] vehicles or equipment

K-Trans also promulgated a substance abuse policy which, as it relates to drug and alcohol testing, included the following:

### Section 6.0

> -Post-Accident Testing: Safety-sensitive employees will be required to undergo urine and breath testing if they are involved in an accident while on duty for KAT unless the KAT official in charge at the time determines, using the best information available at the time of the decision, that the covered employee's performance can be completely discounted as a contributing factor to the accident. This includes all employees that are on-duty in vehicles and any other whose performance could have contributed to the accident.

---

[1] K-Trans is also known as KAT.

Following an accident, the employee will be tested as soon as possible, but not to exceed eight hours for alcohol testing and 32 hours for drug testing.

**Section 10.0**

KAT's agency disciplinary policy regarding this testing program will be as follows:

Any safety-sensitive or non-safety-sensitive employee who has an alcohol concentration of 0.02 or greater but less than 0.04 will receive a "miss-out" and be subject to all employee "miss-out" rules;

Any safety-sensitive or non-safety-sensitive employee who has a verified positive drug test result, an alcohol concentration of 0.04 or greater, or who refuses to submit to a test will be referred to a Substance Abuse Professional for evaluation and his/her employment with KAT will be terminated.

K-Trans, *inter alia*, made the following statements of undisputed facts, all of which were agreed to by counsel for Mr. Manning.

(6)   Plaintiff is a black male.

(7)   K-Trans' General Manager, who also was Plaintiff's supervisor, is Tim Lett. Mr. Lett is a white male.

(8)   K-Trans' Director of Safety and Training at the time of the events made the subject of this action was Greg Robinson, who is a black male.

(9)   K-Trans' Director of Operations at the time of the events made the subject of this action, Dennis Lowery, is a black male.

(10)   Plaintiff became K-Trans' Maintenance Director in October 1994 when he was promoted to that position by General Manager Tim Lett, who Plaintiff now alleges in this action engaged in intentional racial discrimination against him.

(11)   K-Trans' Director of Safety and Training, Greg Robinson, a black male, was promoted to that position by General Manager Tim Lett.

(12)   K-Trans' Director of Operations, Dennis Lowery, a black male, was promoted to that position by General Manager Tim Lett.

(13)   General Manager Tim Lett was responsible for determining the level of compensation paid to K-Trans' various department managers.

-4-

(14)   As of the date Plaintiff was terminated from his employment with K-Trans, Plaintiff had the highest annual compensation among the various department directors. These director positions included: Director of Maintenance, Director of Operations, Director of Safety and Training, Director of Human Resources and Director of Marketing.

The proof shows that the white male employee, above-referenced, whose conduct as to the use of alcohol was at least comparable and arguably more egregious than that of Mr. Manning, received much less punishment–suspension of three days with pay, removal from supervising K-Trans busses at U.T. football games, and a letter of reprimand. He did, however, when asked, immediately submit to testing.

Mr. Manning's termination was predicated upon his refusal to obey a direction to submit to testing.[2] Mr. Manning insists that he was never instructed to be tested for alcohol, but only drugs, which, as already noted, he successfully passed.

However that may be, it is undisputed that he did not submit to testing in a timely manner in accordance with the rules of K-Trans.

With regard to the direction given for testing, both Mr. Lowery and Mr. Robinson testified that he was instructed to have testing for both alcohol and drugs. However, Mr. Manning states it was only for drugs, and for the purpose of disposition of this appeal, we take as true the instruction was only for drugs. Thus, under the present record, Mr. Manning was terminated for not complying with an instruction that he was never given.

This, however, does not end our inquiry, as we must determine whether the undisputed proof shows that his termination was not because of racial discrimination. In this regard, we first note that Mr. Lett, relying upon the evidence of Messrs. Lowery and Robinson as to the instructions given, terminated Mr. Manning because of Mr. Lett's belief that Mr. Manning had violated the substance abuse policy above-referenced, which would be ground for termination, whereas the white male had complied with the policy. Given this circumstance and Mr. Lett's history of promoting blacks to positions formerly held by whites, which included Mr. Manning, and the fact that he was the highest paid supervisor in the system, we cannot find that there is material dispute that racial bias played any part in his dismissal.

---

[2]     Mr. Lett testified that had Mr. Manning passed the tests he would not have been terminated.

-5-

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against Mr. Manning and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE